IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THELMA BROWN,<br><br>Plaintiff,<br><br>v.<br><br>HYATT PLACE,<br><br>Defendant. | Case No. 1:20-cv-05240<br><br>Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Thelma Brown ("Brown") filed this *pro se* action against her former employer Defendant Hyatt Place[1] ("Hyatt Place") for violating the Illinois Human Rights Act (IHRA), 775 ILCS 5/2-102 *et seq.*, by terminating her employment because of her race. Hyatt Place properly filed a notice of removal invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, (Dkt. 1, 10), and now moves to dismiss pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* and Fed. R. Civ. P. 12(b)(3). For the reasons stated herein, Defendant's motion to dismiss (Dkt. 5) is granted.

### I. Legal Standard

Under Fed. R. Civ. P. 12(b)(3), the Court may dismiss a claim for improper venue. *See Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (citing *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740,

---

[1] Defendant notes that Commonwealth Hotels, LLC, the owner of the Hyatt Place hotel, should have been named as the Defendant in Brown's Complaint. (Dkt. 5, fn. 1). For the sake of clarity, the Court will continue to refer to the Defendant as Hyatt Place.

1

746 (7th Cir. 2007)) ("An arbitration clause is simply a type of forum-selection clause [. . .] and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)."). Further, according to Rule 12(b)(3), a district court is free to consider documents beyond the pleadings including the parties' arbitration agreements. *See Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) ("When ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings") (quotations omitted). Although the Court considers facts outside those in the Complaint, it "construes all facts" and "draws reasonable inferences in favor of the plaintiff." *Castro v. Dart*, 483 F. Supp. 3d 564, 571 (N.D. Ill. 2020) (citing *Faulkenberg*, 637 F.3d at 806) (quotations omitted). [2]

**II. Background**

Brown was first employed by Hyatt Place in January of 2017. (Dkt. 13, 1). On October 23, 2018, Hyatt Place terminated Brown's employment. (Dkt. 5, Ex. 2 at 2). Brown's supervisor claimed she was terminated because she missed work without informing him of her absence (a "no show, no call" situation). (Dkt. 1, Ex. 2 at 6). Brown asserts that she had "perfect attendance." (Dkt. 13, 1). She also alleges that she "was fired because [she] was not Mexican," "was the only Black in the building," and because "there was Favoritisme [*sic*] and Nepotism with the Mexicans." (Dkt. 1,

---

[2] The Court also construes this *pro se* Complaint liberally, holding it to a less stringent standard than lawyer-drafted pleadings. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

Ex. 2 at 6–7). In support of these allegation Brown notes that unexcused absences among her Mexican colleagues did not result in similar punishment. *Id.*

After her termination Brown filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").[3] (Dkt. 1, Ex. 2 at 13). On February 7, 2020, Brown filed a complaint in Illinois state court alleging she was wrongfully terminated because of her race in violation of the Illinois Human Rights Act. (Dkt. 1, Ex. 2). On September 1, 2020, Hyatt Place removed this action to federal court. (Dkt. 1, 1). The instant motion to dismiss was filed on September 2, 2020. (Dkt. 5).

Brown agreed to Hyatt Place's arbitration policy in writing on three separate occasions: first, prior to her employment in her employment application; second, in her Associate Handbook Acknowledgement Form, and third, in a later Associate Handbook Acknowledgement Form that incorporated revisions to the Handbook. (Dkt. 5, Ex. 1 at 1–5). The relevant provisions of these three agreements are as follows:

The Employment Application states:

> I hereby agree and understand that [Defendant] has an Associate Dispute Resolution Policy and that neither the company nor I will litigate claims against each other in court or judicial type proceedings before administrative agencies.

(Dkt. 5, Ex. 3 at 2). This agreement was signed by Brown on December 21, 2016. *Id.* The first Associate Handbook acknowledgment, signed on January 2, 2017, states:

> I have received a copy of the [Defendant's] Associate Handbook. I will promptly read the Associate Handbook, including the binding Associate Dispute Resolution policy.

---

[3] The disposition of this EEOC charge is not clear from the record, and neither party makes it a feature of their arguments. The Court does not reach the issue of exhaustion.

*Id*. at 3. The Handbook itself says:

> This Associate Dispute Resolution policy ("Agreement") is a legal document that waives the right to a court or jury trial and requires employment-related legal claims to be sent through a process which, as the last step, involves final and binding arbitration instead of court. The Agreement contains waivers of statutes of limitations (i.e., the time in which an associate can bring a claim) and it addresses how the steps and arbitration will be handled. Associates who continue employment with [Defendant] for 30 days following receipt of this Agreement have accepted it and are bound to it. The consideration for the Agreement will be continued employment, or [Defendant's] agreement to pay arbitration costs, as well as to arbitrate associate claims, or [Defendant's] commencement of the process upon request.
>
> We will use this Agreement in place of any rights to an administrative remedy or to submit any covered legal claim directly to a court or jury. The Agreement will cover all employment-related legal claims against [Defendant] or any of its agents, owners, directors, officers or supervisors [...], as well as [Defendant's] claims against associates, except for: National Labor Relations Act claims; class or collective actions; claims relating in any way to non-competes/employee unfair trade secret practices/trade secrets'; unemployment compensation; or worker's compensation. Any dispute concerning whether this policy has formed an agreement (which it has) shall be subject to arbitration.
>
> [. . .]
>
> **Unlike other provisions in this handbook, this Associate Dispute Resolution policy is a binding contract.**

(Dkt. 5, Ex. 3 at 4–5, emphasis original). The revised Associate Handbook uses the same language as the previous one with no material revisions. (Dkt. 5, Ex. 3 at 7–9). On May 19, 2017, Brown again signed an Associate Handbook Acknowledgement Form stating she received a copy of the revised handbook. (Dkt. 5, Ex. 3 at 6).

In her response brief, Brown does not mention these arbitration agreements or address the Defendant's arguments. (Dkt. 13, 1). In a later supplementary filing, Brown says only "regarding enforceable arbitration agreement, I have no knowledge of this." (Dkt. 17, 1).

**III. Analysis**

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the "FAA"), was meant "to ensure that private arbitration agreements are enforced according to their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 469 (1989). Section 2 of the FAA requires federal courts to place arbitration agreements "upon the same footing as other contracts." *Id.* at 478 (citations omitted). Under the FAA, "if the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, the arbitration requirement must be enforced." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015) (citing 9 U.S.C. §§ 3–4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). Courts in the Seventh Circuit order arbitration when three elements are present: "(1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *See Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 754 (7th Cir. 2017). Brown has refused to arbitrate, so the Court examines only the first two elements.

**A. Valid Agreement to Arbitrate**

Whether a valid and binding arbitration agreement exists is a question of state contract law. *See Bahoor*, 152 F. Supp. 3d at 1097 (citing *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010)). "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006) (holding that an arbitration agreement can constitute an offer and continued employment can constitute both acceptance and consideration

5

and collecting Illinois cases). Brown's signed arbitration agreements are valid contracts. *See Moreno v. Progistics Distribution, Inc.*, No. 18 CV 1833, 2018 WL 3659348, at *5–6 (N.D. Ill. Aug. 2, 2018) (signing an acknowledgement of receipt of an employee handbook containing an arbitration agreement fulfilled the requirements of offer and acceptance, and either continued employment or the mutuality of the promise to arbitrate were adequate consideration).

Brown argues that she has "no knowledge" of any such arbitration agreement, (Dkt. 17, 1), but in Illinois "a party to a contract is charged with knowledge of and assent to a signed agreement" and "ignorance of the contract's arbitration provision is no defense if [the plaintiff] failed to read the contract before signing." *Faulkenberg*, 637 F.3d at 809 (citing *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810 (Ill. App. Ct. 1993)). Because Brown's signature is on all three of the documents, and she has not brought any extenuating circumstances to the Court's attention, ignorance cannot render the agreement unenforceable.

Brown also argues that Hyatt Place waived its right to arbitrate when its Vice President of Human Resources allowed her to file a complaint with the EEOC without invoking the arbitration agreement. (Dkt. 17, 1). The Seventh Circuit has held that a defendant's participation in an EEOC proceeding does not nullify an arbitration agreement. *See Melton v. Pavilion Behav. Health Sys.*, No. 20-2399, 2021 WL 1327844, at *2 (7th Cir. Apr. 9, 2021) ("the EEOC's right-to-sue letter did not override the arbitration agreement").

6

**B. Claims Fall within the Scope of the Agreement**

The language of the arbitration provisions in the three agreements signed by Brown is unambiguous. These agreements refer to "claims" and "all employment-related legal claims" (Dkt. 5, Ex. 3 at 2, 4–5). Brown's allegation that Hyatt Place terminated her employment for racially discriminatory reasons is an employment-related dispute and therefore within the scope of these arbitration agreements. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) ("Employment discrimination claims arising under Title VII are issues referable to arbitration"); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) ("Broad arbitration clauses [. . .] necessarily create a presumption of arbitrability"). Thus, Brown's claims fall within the scope of the arbitration agreement.

**IV. Conclusion**

Defendant's motion to dismiss for improper venue (Dkt. 5) is granted with prejudice. The Clerk is directed to enter judgment in favor of the Defendant, Hyatt Place, and against the Plaintiff, Brown. Civil case terminated.

E N T E R:

Dated: April 20, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

7